# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BARBARA C. WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | **Case No. 09 CV 4484** |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| | ) | |
| Defendant. | ) | **March 10, 2011** |

## MEMORANDUM OPINION and ORDER

On September 1, 2010, this court reversed the Commissioner's decision denying plaintiff Barbara Washington's applications for disability insurance benefits and supplemental security income under the Social Security Act ("SSA") and remanded her case to an administrative law judge ("ALJ") for further consideration. Washington now seeks attorney's fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), for the prosecution of her appeal before this court. For the following reasons, Plaintiff's Motion for Attorney's Fees Under the Equal Access to Justice Act and for Entry of Final Judgment Order is granted:

## Background[1]

In December 2004, Washington filed applications for SSA benefits, alleging that she was disabled by several physical impairments as of March 2004. (Administrative Record

---

[1] A more thorough accounting of this case's history—including the evidentiary record and the ALJ's reasoning—is set forth in this court's summary judgment opinion. (R. 19.)

("A.R.") 69-70.) When the Social Security Administration denied her applications, (id. at 71-80), Washington sought and was granted a hearing before an ALJ, (id. at 392-447). After considering Washington's evidence and consulting medical and vocational experts, the ALJ issued a decision in June 2007, finding that Washington was not disabled. (Id. at 61-68.) Washington then requested a review of the ALJ's decision, (id. at 53), and in September 2007, the Appeals Council granted the request, (id. at 42-44). The Appeals Council vacated the ALJ's decision and remanded the case for a second hearing. (Id. at 43-44.)

The ALJ held a second hearing in October 2008, and after considering Washington's additional evidence and consulting different medical and vocational experts, the ALJ issued a second decision in November 2008, concluding again that Washington was not disabled. (A.R. 23-30.) In reaching this determination, the ALJ applied the required five-step analysis, *see* 20 C.F.R. §§ 404.1505(a)-(g), 416.920(a)-(g), finding that Washington suffered from severe impairments, which included Meniere's disease and a history of dizziness. (Id. at 25.) At step four, the ALJ assessed Washington's residual functional capacity ("RFC") and determined that she could perform light work with certain restrictions. (Id. at 27.) At step five, the ALJ concluded that Washington could return to her past relevant work as a cashier and security guard. (Id. at 29.)

Washington again requested a review of the ALJ's decision, (id. at 19), however, the Appeals Council denied her request making the ALJ's decision the final decision of the Commissioner, (id. at 8-9). *See* 20 C.F.R. §§ 404.981, 416.1481. Washington then sought

2

judicial review of the Commissioner's decision and the parties consented to the jurisdiction of this court. *See* 28 U.S.C. § 636(c). In granting summary judgment to Washington, this court determined that the ALJ made reversible errors in assessing Washington's RFC and credibility, and that the ALJ's hypothetical question to the vocational expert was flawed.

**Analysis**

**A.     Standard of Review**

This court may award fees under EAJA if the following four elements are met: (1) the claimant was a "prevailing party"; (2) the government's position was not "substantially justified"; (3) there were no special circumstances that would make an award unjust; and (4) the claimant files a complete and timely application. 28 U.S.C. § 2412(d)(1)(A); *Stewart v. Astrue*, 561 F.3d 679, 683 (7th Cir. 2009). Here, the only element that the parties contest is whether the Commissioner's position was substantially justified. It is the Commissioner's burden to demonstrate that both its pre-litigation conduct—which includes the decisions of the ALJ and Appeals Council—and its litigation position were substantially justified. *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004).

As the Seventh Circuit has acknowledged, determining whether the government's position was substantially justified presents a difficult line-drawing task. *See United States v. Thouvenot, Wade & Moerschen, Inc.*, 596 F.3d 378, 381 (7th Cir. 2010). "The case must have sufficient merit to negate an inference that the government was coming down on its small opponent in a careless and oppressive fashion." *Id.* at 381-82. To negate that

3

inference, the government must show the following: "(1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the theory propounded." *Conrad v. Barnhart*, 434 F.3d 987, 990 (7th Cir. 2006). Put differently, the government must show that its position was "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Although this determination requires the court to look to both the government's pre-litigation conduct and litigation position, it will "make only one determination for the entire civil action." *Conrad*, 434 F.3d at 990.

In this case, the government failed to demonstrate that its position was substantially justified. The court remanded the ALJ's decision for three reasons. First, the ALJ failed to properly assess Washington's RFC because he did not discuss what record evidence he relied on when he concluded that Washington could perform her past relevant work as a cashier and security guard. Next, the ALJ erred in his credibility assessment of Washington because the four reasons he gave for rejecting Washington's testimony were flawed and he failed to explain how these reasons led him to reject Washington's testimony. Furthermore, the ALJ summarily discredited Washington's testimony regarding her subjective complaints because her statements were inconsistent with the ALJ's RFC assessment. Finally, the ALJ posed an improper hypothetical question to the vocational expert which failed to take into account the expected frequency of Washington's absenteeism from work.

**B.     RFC Finding**

The Commissioner was not substantially justified in defending the ALJ's RFC finding because the ALJ failed to comply with Social Security Ruling ("SSR") 96-8p, which requires that an ALJ explain the rationale for his assessment of a claimant's RFC. *See* SSR 96-8p, 1996 WL 374184, at *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."). Here, contrary to SSR 96-8p, the ALJ failed to explain what medical and nonmedical evidence supported his finding that Washington was capable of performing light work with certain restrictions. (R. 19, SJ Op. at 23-25.) Instead, the ALJ simply rejected Dr. Rubenfeld's medical opinion and determined that Washington could lift and carry 20 pounds, sit for six hours in an eight-hour workday with a sit/stand option, and balance, stoop, or kneel occasionally, without articulating what evidence he relied on in reaching this conclusion. (Id. at 15.)

Furthermore, the ALJ failed to address Washington's daily activities, the fact that she took college courses online instead of taking courses on campus, or that she needed to be on bed rest one to two days per month. (R. 19, SJ Op. at 24.) The ALJ also did not consider the nature of Washington's Meniere's disease, which produced symptoms that waxed and waned, in assessing her ability to work on a sustained basis. (Id.) The ALJ therefore erred as a matter of law because he failed to include a narrative explanation of how the record evidence

5

supported his RFC assessment that Washington was capable of performing her past relevant work. *Stewart*, 561 F.3d at 684 ("an ALJ must articulate in a rational manner the reasons for his assessment of a claimant's residual functional capacity"); *Samuel v. Barnhart*, 316 F.Supp.2d 768, 772 (E.D. Wis. 2004) ("By failing to include in his narrative discussion a description of how the medical evidence supported his [RFC] finding, the ALJ committed a clear error of law.")

In his response, the Commissioner ignores relevant legal authority and fails to satisfactorily explain why he was substantially justified in defending the ALJ's unsupported RFC assessment. The Commissioner asserts that the ALJ did not need to discuss Washington's daily activities, the fact that she took college courses online instead of taking courses on campus, or that she needed to be on bed rest one to two days per month, because these activities do not support her claims of disability. (R. 26, Def.'s Resp. at 5.) But SSR 96-8p mandates that an ALJ discuss the medical and nonmedical evidence he relied on in assessing a claimant's RFC and explain how inconsistencies in the case record were resolved. The ALJ was not permitted to simply ignore Washington's activities. Rather, the ALJ was required to include a narrative explanation in his decision describing why he believed these activities did not support Washington's claims of disability. Furthermore, the Commissioner attempts to defend the ALJ's RFC finding by relying on evidence in the record that the ALJ himself did not rely on when he assessed Washington's RFC. (Id. at 6-7.) The Commissioner's post hoc rationalizations, however, are improper because a court must

6

confine its review to those reasons that are articulated by an ALJ. *Spivia v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010); *Stewart*, 561 F.3d at 684 (in reviewing an RFC assessment, "a court must confine itself to the reasons supplied by the ALJ").

Because the ALJ's RFC assessment conflicted with SSR 96-8p and relevant judicial precedent, there was no reasonable basis in law or fact for the RFC finding. Therefore, the Commissioner's pre-litigation conduct and litigation position in defending the ALJ's RFC assessment are not substantially justified. *See e.g.*, *Golembiewski*, 382 F.3d at 724 (reversing denial of EAJA fee petition where ALJ's decision was remanded because the ALJ "violated clear and long judicial precedent and violated the Commissioner's own Ruling and Regulations"); *Stewart*, 561 F.3d at 684 (same); *Morton v. Barhart,* No. 03 CV 0995, 2005 WL 1528242, at *2 (S.D. Ind. June 28, 2005) ("Where the remand results from a straightforward failure to comply with the specific requirements of [a SSR], the Commissioner's position, both before and during litigation, has not been substantially justified."); *Samuel*, 316 F.Supp.2d at 773 (E.D. Wis. 2004) (finding that the Commissioner's position was not substantially justified because "[i]t was unreasonable for the ALJ to disregard SSR 96-8p").

C. **Credibility Finding**

The Commissioner was not substantially justified in defending the ALJ's credibility finding. An ALJ's written decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to

7

make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2. In his decision, the ALJ listed four reasons for finding Washington's testimony not credible. (R. 19, SJ Op. at 27-31.) However, the ALJ failed to explain with the specificity required by SSR 96-7p how these four reasons led him to reject Washington's testimony. (Id. at 27-30.) And the ALJ's reasons for finding Washington's testimony not credible were also flawed. (Id.) Furthermore, the ALJ erred by summarily rejecting Washington's testimony regarding her subjective complaints because her statements were inconsistent with his RFC assessment. (Id. at 30-31.)

The ALJ first discredited Washington's testimony because at the time of the hearing she was working for Avon, which led the ALJ to infer that she was engaged in full-time work. (R. 19, SJ Op. at 27.) However, in reaching this conclusion, the ALJ mischaracterized the nature of Washington's employment because she worked from home selling Avon products online about two to eight hours per week and she did not earn more than $300 in a month. (Id.) The ALJ further discredited Washington's testimony because she did not report any income from her work with Avon, but the ALJ failed to identify any record support for that contention. (Id. at 27-28.)

The second reason the ALJ gave for discrediting Washington's testimony was that her alleged impairments were not supported by medical records. (R. 19, SJ Op. at 28.) In particular, the ALJ referenced Washington's testimony that she spent three days on bed rest

the week before the hearing due to severe dizziness and concluded that she was lying about her symptoms because she undertook bed rest without a physician ordering that treatment. (Id.) However, as this court explained in its summary judgment decision, this type of reasoning is improper. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). And this court further noted that while there was no medical evidence confirming that Washington spent three days on bed rest, her testimony was consistent with a diagnosis of Meniere's disease and treatment notes indicating that she had similar episodes. (Id.)

The ALJ's third reason for discrediting Washington's testimony was that the diagnostic medical tests, which included "Brain/Head" and "EEG" testing, produced normal results and did not support her allegations. (R. 19, SJ Op. at 28.) However, the ALJ failed to recognize that these types of tests do not confirm a diagnosis of Meniere's disease. (Id. at 28-29 n. 3.) Also, the ALJ did not consider or discuss the results of Washington's ENG, which Dr. Rubenfeld noted produced abnormal results. (Id. at 29.) Dr. Rubenfeld diagnosed Washington as having Meniere's disease, prescribed a treatment plan, and ruled out other conditions. (Id.)

The fourth reason the ALJ gave for discrediting Washington's testimony was her refusal to undergo vestibular rehabilitation physical therapy. (R. 19, SJ Op. at 29-30.) Although the Seventh Circuit has instructed that infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding, *see Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008), the record does not show that the ALJ ever questioned Washington at

9

the hearing as to her reasons for not following through with the recommended physical therapy. (Id. at 29.)

Furthermore, in assessing Washington's credibility, the ALJ summarily discredited her testimony regarding the limiting effects of her impairment because her statements were inconsistent with his RFC assessment. (R. 19, SJ Op. at 30-31.) However, the ALJ was required to assess Washington's credibility *before* developing the RFC. *See Brindisi v. Barnhart*, 315 F.3d 783, 787-88 (7th Cir. 2003). Because the ALJ failed to properly analyze Washington's testimony with respect to her symptoms and daily activities, this court could not determine if the ALJ independently evaluated Washington's credibility rather than simply dismissing her testimony because it did not fit within his RFC assessment. (Id.)

The Commissioner defends that the ALJ considered Washington's testimony as required by SSR 96-7p and gave four examples from the record evidence that supported his credibility finding. (R. 26, Def.'s Resp. at 6.) The Commissioner asserts that while the ALJ did not indicate that these four reasons were the only reasons for discrediting Washington's testimony, a review of the record as a whole shows that the ALJ's credibility assessment was substantially justified. (Id.) Contrary to the Commissioner's position, SSR 96-7p requires that an ALJ articulate with specificity the reasons for his credibility determination. *Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) ("nothing in Social Security Ruling 96-7p suggests that the reasons for a credibility finding may be implied"). The Commissioner also avers that Washington's daily activities, which include taking college

10

courses online and selling Avon, constitute evidence that detracts from her claim of total disability. (Id.) In asserting this position, the Commissioner is again improperly relying on facts that the ALJ did not discuss in his decision. *Spivia*, 628 F.3d at 353; *Stewart*, 561 F.3d at 684.

Because the ALJ failed to comply with the requirements of SSR 96-7p and judicial precedent for evaluating Washington's testimony and because the reasons the ALJ gave for discrediting Washington's testimony were flawed, there was no reasonable legal or factual basis for the credibility finding. Accordingly, the Commissioner's pre-litigation conduct and litigation position in defending the ALJ's credibility finding are not substantially justified. *See e.g., Golembiewski*, 382 F.3d at 724; *Stewart*, 561 F.3d at 684; *Morton*, 2005 WL 1528242, at *2; *Samuel*, 316 F.Supp.2d at 773; *Lechner v. Barnhart*, 330 F.Supp.2d 1005, 1009 (E.D. Wis. Aug. 26, 2004) ("Because the ALJ failed to comply with SSR 96-7p and to consider all of the relevant evidence and factors, the Commissioner's position on this issue was not substantially justified.").

**D.** **Hypothetical Question**

Finally, the Commissioner's position in defending the hypothetical question posed by the ALJ to the vocational expert, James Breen, was not substantially justified. When an ALJ relies on testimony from a vocational expert, the "hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Here, the court

11

determined that the ALJ's hypothetical question was flawed because it did not account for the expected frequency of Washington's absenteeism given the unpredictable nature of her symptoms. (R. 19, SJ Op. at 32.) And the ALJ further erred because he did not explain why he rejected Washington's testimony that she was confined to bed rest for nine days in the month before the hearing. (Id.)

The Commissioner contends that because the ALJ did not find that Washington would have multiple absences from work, he was not required to include that limitation in the hypothetical question or discuss Breen's testimony regarding multiple absences. (R. 26, Def.'s Resp. at 7.) In particular, the Commissioner points out that the ALJ was not required to include Breen's testimony in the hypothetical question that an individual who is absent from work more than 10 to 12 times per year would not be able to sustain full-time employment. (Id.)

The court is not persuaded by the Commissioner's argument. Because the ALJ violated Social Security Rulings and longstanding judicial precedent in assessing Washington's RFC and credibility, the ALJ's hypothetical question was also based on flawed reasoning and misapplication of law. *Stewart*, 561 F.3d 684 ("Likewise, the formulation of the hypothetical given to the vocational expert also contradicts judicial precedent. When an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record."); *Samuel*, 316 F.Supp.2d at 778 (concluding that the ALJ's hypothetical question to the vocational expert may have been

12

incomplete because omissions from the hypothetical question were related to the ALJ's improper RFC and credibility assessments"). Accordingly, the Commissioner's pre-litigation conduct and litigation position in defending the ALJ's hypothetical was not substantially justified.

E.    **Reasonableness of Fee Request**

Turning to the reasonableness of the fee request, Washington seeks $7,512.85 for her prosecution of this action, representing 42.5 hours of work at an hourly rate of $173.37, 1.5 hours of legal assistant work at the rate of $85 per hour, and $17.13 in costs. Washington also seeks $468.09 in attorney's fees for work performed by counsel with respect to this EAJA petition. The government has not contested the reasonableness of the fee request. Washington's attorney acknowledges that any EAJA award is payable to Washington, rather than to him directly. (R. 27, Pl.'s Reply at 5.)

EAJA provides that "attorney fees shall not be awarded in excess of $125.00 per hour unless the court determines that an increase in the cost of living . . . justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). In 2008 the Seventh Circuit recognized that "given the passage of time since the establishment of the hourly rate, a cost-of-living adjustment is warranted." *Tchemkou v. Mukasey*, 517 F.3d 506, 512 (7th Cir. 2008). The requested hourly rate is supported by cost of living calculations set forth in the Consumer Price Index—which Washington attached to her motion. Courts have approved comparable hourly rates for late 2009 and 2010—the year in which Washington's attorney completed the bulk of his work on

this case. *See e.g., Warren v. Astrue,* No. 09 CV 6498, 2010 WL 5110217, at *5 (N.D. Ill. Dec. 8, 2010) ($173.75 rate approved); *McDonald v. Astrue*, No. 09 CV 027, 2010 WL 4818092, at *2 (W.D.N.C. Nov. 22, 2010) ($173.68 rate approved); *Zellner v. Astrue*, No. 08 CV 1205, 2010 WL 4739517, at *2 (M.D. Fla. Nov. 16, 2010) ($172.24 rate approved for 2009 and $173.96 rate approved for 2010); *Hieu Thi Tran v. Astrue*, No. 09 CV 4074, 2010 WL 3928482, at *1 (C.D. Ill. Sept. 23, 2010) ($173.36 rate approved). Also, the number of hours Washington's attorney spent on this case falls within the permissible range for social security cases, which has been noted to be 40-60 hours. *See Schulten v. Astrue*, No. 08 CV 1181, 2010 WL 2135474, at *6 (N.D. Ill. May 28, 2010) (collecting cases). Accordingly, this court finds that the amount of the fee Washington seeks is reasonable.

## Conclusion

Plaintiff's Motion for Attorney's Fees Under the Equal Access to Justice Act and for Entry of Final Judgment Order is granted. Washington is awarded attorney's fees and costs in the amount of $7,980.94, to be paid to Washington and mailed to Washington's attorney's office.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**